

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable William J. Lawson
Secretary of State
Austin, Texas

                         Opinion No. O-4582
                         Re: Priority of State's Franchise
                             Tax Lien over Contractual Liens.

Dear Sir:

       We have received and considered your request for
an opinion from this department. We quote from the pertinent
part of your inquiry as follows:

       "Does the lien for Franchise Taxes, arising
    by operation of law, supercede and have priority
    over a valid existing lien which antedates the
    Franchise Tax lien?

       "If it is your opinion that the answer to
    the foregoing question is in the affirmative,
    then you are requested to advise whether or not
    the State can exert its Franchise Tax lien against
    property that may have been obtained by foreclo-
    sure of such pre-existing lien, and possibly in
    the hands of some one advancing the defense of
    'Innocent Purchaser.'"

       It is provided by Article 7084, of Vernon's Civil
Statutes of Texas, as amended by Article VIII of House Bill
8, Acts 47th Legislature, Regular Session, that each and
every domestic and foreign corporation, chartered or auth-
orized to do business in Texas, shall, on or before May 1 of
each year, pay in advance to the Secretary of State a fran-
chise tax for the year following at the rate and as calculated
in the manner provided in said statute.

       The tax imposed upon corporations, by the statute
referred to above, is a tax upon the corporation for the

privilege of carrying on business in Texas. Ford Motor Company v. Beauchamp, 60 S. C. C. 273, 308 U. S. 331, 84 Law Ed. 304; Gaar, Scott & Company v. Shannon, 115 S. W. 361; United North and South Development Company v. Heath, 78 South Western (2d) 650.

Article 7089, of Vernon's Civil Statutes of Texas, provides that all corporations required to pay an annual franchise tax shall between January 1 and March 15 of each year make a report to the Secretary of State, on blanks furnished by that officer, showing the condition of such corporation on the last day of its preceding fiscal year. That statute further provides for the general information that must be shown on said franchise tax report. The statute concludes with the following: "The State shall have a prior lien on all corporate property for all franchise taxes, penalties and interest."

The tax is to be computed from the reports required by Articles 7087 and 7089, as amended, of Vernon's Civil Statutes of Texas and the corporation, in fact, usually fixes its own tax. Southern Realty Company v. McCallum, 65 Federal (2d) 939, Certiorari denied, 4 S. Ct. 127, 290 U. S. 692, 78 Law Ed. 596.

Article 7095, of Vernon's Civil Statutes of Texas, provides for the Attorney General to bring suit against any corporation to recover franchise taxes, penalties and interest and to forfeit its charter in the manner therein provided.

The nature and extent of the franchise tax lien provision in Article 7089, supra, does not appear to have been before the Texas courts. However, the Fifth Circuit Court of Appeals in the case of Southern Realty Company v. McCallum, supra, in passing upon an alleged want of equal protection in the franchise tax laws of Texas because a foreign corporation, coming into Texas to do business, does not have to make a report or pay the tax until the end of the first year, said: "The suggestion that the foreign

corporation might withdraw from Texas during the first year and evade the taxes is without merit. Most likely the State could assert a lien for the tax though it had not been computed, but, if the tax be lost, other taxpayers ought not to be released from their obligations. Such is not the usual result when some taxpayer evades his tax."

The case of Mission Independent School District v. Armstrong, (Tex. Comm. App.) 222 S. W. 201, although not involving the franchise tax laws of this State, is pertinent to a consideration of your question. In that case the facts showed that an independent school district assessed a school tax upon the property of an oil company for the years 1912, 1913, and 1914. On January 6, 1914, the First National Bank of Brownsville sold the property at a trustee's sale under the provisions of a deed of trust which the company had executed and delivered to it; and Armstrong, a stockholder in the company, became the purchaser. Subsequent to the purchase, and after the taxes for 1912 and 1913 became delinquent, and after demand for payment, the tax collector levied upon the property and advertised it to be sold for the delinquent taxes. Armstrong, who was at that time engaged in dismantling the property, paid the amount, under protest, in order that he might not be inconvenienced in the work and in order that he could remove it from the county. The property consisted of buildings erected upon a railway right of way with an agreement that it could be removed. Armstrong sued to recover and the school district filed an answer therein and a cross-action to recover the taxes. The Commission of Appeals said:

"(1) The sole question presented for our determination is: Did the Mission independent school district by the levy of a tax by the collector have a lien upon the personal property within the district?

". . . The articles pertinent to be considered here are 957, 958, and 961. The latter part of article 958 reads:

"'The assessor and collector shall have full power to levy upon any personal property

Honorable William J. Lawson - page 4

to satisfy any tax imposed by this title; all
taxes shall be a lien upon the property upon
which they are assessed, and, in case any prop-
erty levied upon is about to be removed out
of the city, the assessor or collector shall
proceed to take into his possession so much
thereof as will pay the taxes assessed and costs
of collection.'

"Article 957 provides, in substance, that
the assessor has the power to levy upon so much
property liable to taxation as may be suffi-
cient to pay the taxes due from the person
owing the tax, and to advertise and sell the
same to satisfy the taxes, cost, and fees.  The
only question of difficulty presented is, when
does the lien given by article 958 attach?

". . . The provisions of these articles
do not deal with the creation of liens, but
were enacted for the guidance of the collector
in the discharge of his duty, to the end that
the power levying the tax may not suffer the
loss of the assessment.  Article 958 governs
in so far as the creation of the lien is con-
cerned, while article 957 provides the manner
of the enforcement of the lien thus created.
Crawford v. Koch, 169 Mich. 372, 135 N. W. 339.

"(2) As article 958 does not fix a spec-
ific date when the lien given therein shall
attach; and in the absence of a specific date,
the lien thus created attached and became an
incumbrance upon the property as soon as the
assessment was made.  Carswell & Co. v. Hab-
barzettle, 39 Tex. Civ. App. 494, 87 S. W. 911;
Cruger v. Ginnuth, 3 Willson, Civ. Cas. Ct.
App. # 24; 37 Cyc. 1142 (c).

"(3) The agreed statement of facts shows
that the taxes had been levied and assessed

Honorable William J. Lawson - page 5

for 1912 and 1913, and were due and unpaid
at the time of the trustee's sale under the
deed of trust. The lien, thus created by the
assessment having attached, was not divested
by reason of the sale under the deed of trust.
Defendant in error took the property subject
to the right of the district, through its col-
lector to enforce collection by levying upon
and advertising it for sale to satisfy the lien.
37 Cyc. 1146.

"(4) What has been said with reference to
the lien for taxes for 1912 and 1913 also ap-
plies in so far as the taxes for 1914 are con-
cerned." (Underscoring ours).

The Supreme Court of Texas in State v. Wynne,
134 Texas 455, 133 S. W. (2d) 951, appeal dismissed 310
U. S. 610, 84 Law Ed. 1388, held that in a receivership
proceeding the motor fuel tax lien of the State, fixed
by Article 7065-a of Vernon's Civil Statutes, was first
and prior to the claim of the United States, under the
priority statute (31 U. S. C. A. Section 191) and prior
to the lien claim of one holding a deed of trust securing
first mortgage bonds. A companion case, with very sim-
ilar facts, in the State courts was State v. Nix, 134
Texas, 476, 133 S. W. (2d) 953, which case was reversed
by the United States Supreme Court, under the style of
United States v. Texas, 62 S. Ct. 350, 314 U. S. 350, 86
Law Ed. _____, which latter court held that the claims
of the United States came first ahead of the claim of
Texas for motor fuel taxes under the said Federal pri-
ority statute. The holder of a regular mortgage and a
chattel mortgage who was a party to the suit in the State
courts, did not appeal from the judgment of the Supreme
Court of Texas which held that his claims were second to
the motor fuel lien of the State and ahead of the claim
of the Federal government, and the Supreme Court of the
United States expressly said that it was not passing upon
the rights of the holder of said contractual liens. The

United States Supreme Court in United States v. Texas, supra, seemed to rely heavily up n the case of New York v. Maclay, 288 U. S. 290, 77 L. Ed. 754, in its opinion. The Maclay case, supra, concerned whether or not the State of New York was entitled to have its franchise taxes declared prior to and ahead of the claim of the Federal Government, in a receivership proceeding, under the Federal priority statute. The United States Supreme Court pointed out very clearly that the franchise tax lien was nothing more than "a caveat of a more perfect lien to come" and, therefore, not entitled to priority, under the Federal priority statute, to the claims of th United States. Nevertheless, the court made it clear that the lien was sufficient for other purposes when it said:

> "By the statutes of New York, 'every such tax or fee (including the annual franchise tax to be paid by corporations) shall be a lien and binding upon the real and personal property of the corporation. . . liable to pay the same until the same is paid in full.' N. Y. Tax Law, Consol. Laws, chap. 60, § 197. The lien thus created is effective for many purposes though its amount is undetermined. It is notice to mortgagees or purchasers, who are held to loan or purchase at their own risk if they take their mortgages or deeds before the tax has been assessed or paid. Carey v. Keith, 250 N. Y. 216, 164 N. E. 912; Engelhardt v. Alvino Realty Co. 248 N. Y. 374, 162 N. E. 287. In that respect it is similar t the lien of a transfer tax or duty upon the estate of a decedent. Midurban Realty Corp v. F. Lee & L. Realty Corp. 247 N. Y. 307, 160 N. E. 380; Stock v. Mann, 255 N. Y. 100, 104. It will even be superior, at all events after assessment (New York Terminal Co. v. Gaus, 204 N. Y. 512, 514, 98 N. E. 11) to mortgages already made, and will thus prevail against a purchaser who buys at a foreclosure sale. New York Terminal Co. v. Gaus, supra. Cf. Marshall v. New

Honorable William J. Lawson - page 7

York, 254 U. S. 380, 384, 65 L. ed. 315, 318, 41
S. Ct. 143. All this is settled in New York
by reiterated judgments.

"The problem here is different. To hold
that a lien has progressed to such a point as
to be a warning to mortgagees and purchasers
of a contingent liability, like a notice of
lis pendens, is far from holding that while
the liability is unliquidated and unknown the
lien thus created is perfect and specific.
By the terms of the hypothesis it is nothing
of the kind. If the state were to stand upon
the warning and omit to ascertain the debt,
it would never be able to sell anything, for
it would not know how much to sell. Against
mortgagees and purchasers a lien perfected
afterwards may take effect by relation as of
the date of the inchoate lien through which
mortgages and purchasers became chargeable
with notice. The doctrine of relation will not
divest the United States of the preference that
accrued when receivers were appointed."

The case of Carey v. Minor C. Health, Inc., supra,
involved the franchise tax laws of New York, the provision
creating the lien being very similar to that part of Article
7068, quoted above. Because of the pertinence of the language
in the case and the similarity of the New York statutes to
our Texas statutes, we quote at length from the case, as fol-
lows:

"The plaintiff sues to recover her purchase
price, together with cost of title search. The con-
tract of real estate purchased was executed Decem-
ber 11, 1925, title to be closed on June 10, 1926.
After five adjournments closing was fixed for
August 3, 1926. On that date title was rejected
for various reasons, among them being the
lien of the unpaid franchise tax for 1925. The

defendant, seller, is a foreign (Delaware) Corporation. Pursuant to article 9-A of the Tax Law (Cons. Laws, c. 60), every foreign corporation doing business in this state 'shall annually pay in advance for the year beginning November first * * * an annual franchise tax, to be computed by the tax commission upon the basis of its entire net income, ' * * for its fiscal or the calendar year next preceding.' Section 209.

"Every corporation shall annually on or before July first transmit to the tax commission a report in the form and manner specified in section 211 of the article. Section 214 states how the tax shall be computed. The tax fixed and imposed shall be paid to the state tax commission on or before the 1st day of January of each year. 'Each such tax * * * shall be a lien and binding upon the real and personal property of the corporation liable to pay the same until the same is paid in full.' Section 219-c.

"This vendor corporation made a return or report pursuant to section 211 on or before July 1, 1925. No tax had been fixed or computed on the report, but nevertheless a tax was due for the year beginning November 1, 1925, and was payable on or before January 1, 1926. It was to be paid 'in advance for the year beginning November first, 1925,' and was made a lien until paid.

"The tax became a lien, therefore, November 1, 1925, although the amount was subject to future computation. This method of collecting a tax due the state is not unlike that provided for collecting the tax on transfers

under article 10 of the Tax Law. Section 222
provides that unless otherwise provided such
taxes shall be due and payable at the time of
the transfer, and section 224 makes them a
lien upon the property transferred until paid.
The lien attaches at the time of transfer,
which, if by will or intestate laws, is the
date of the death of the person seized or pos-
sessed of the property. Midurban Realty Cor-
poration v. 7. Dee & L. Realty Corporation,
247 N. Y. 307, 160 N. E. 380. The amount of
such a tax, however, cannot be ascertained
until the estate is appraised and the rate
and the amount determined as specified in the
act.

"We held in Engelhardt v. Alvino Realty
Co. Inc., 248 N. Y. 374, 162 N. E. 287, decided
after the trial of this case, that such taxes
were a lien upon the corporate property although
no reports had been made and no tax computed.
The tax by law was to be paid as of a certain
date, and the property of the corporation
was burdened with this charge, the exact amount
of which might be subsequently fixed by the tax
commission. It was the duty of the corporation
to have it fixed and to make the payment. We
said that the tax became a lien upon the real
estate of the corporation upon the 15th day of
January in each year. The statute applicable
in that case read somewhat differently from
the present section. The tax was to be a lien
'from the time when it is payable,' and it
was payable on or before January 15th. The
quoted words have been omitted from the present
Tax Law, the wording being: 'Each such tax
* * * shall be a lien and binding upon the
real and personal property of the corporation

liable to pay the same until the same is paid in full." This conforms the language of section 219-c applicable to corporations to the wording of section 224 covering the lien of transfer taxes. Both provisions should, in consequence, have similar construction. The earliest date is chosen for the attachment of the lien, the date of death or transfer in the one case, and the first of November in the other.

"When, therefore, on the 3d of August, 1926, the defendants attempted to close title the property was incumbered by the franchise tax lien for the year 1925 which they had not paid. The amount could easily have been ascertained from the corporation's July report and the tax computed paid."

In State v. Wynne, supra, the Texas Supreme Court, at page 956, said: "The rule is generally accepted in this State that all property rights acquired and held, and all contracts made, are subject to the authority of the State to levy its taxes and collect its revenues for the support of the government."

The question of whether or not a statutory lien is to have priority over other liens is one of legislative intent to be derived from the language of the statutes. State v. Wynne, supra; 61 C. J. page 926, Section 1178.

It will be noted that the legislature of this State has said, in Article 7068, supra, that "the State shall have a prior lien on all corporate property for all franchise taxes, penalties, and interest." The word "prior" is used as an adjective in the statute. Webster's New International Dictionary, Second Edition, gives the adjective "prior" the following definition: "Preceding in the order of time; earlier and therefore taking precedence; previous; . . . anterior; . . ." In Words and Phrases,

Permanent Edition, Volume 33, page 647 it is said: "As between two liens, or in a class of liens, the one superior to the others very properly can be said to be 'prior.'" (Fidelity Ins. Trust and Safe Deposit Company v. Roanoke Iron Company, 81 Fed. 439, 447). We think the legislature in using the word "prior" in said Article 7089, supra, intended that the State's lien to secure the payment of franchise taxes, penalties, and interest should be precedent in order of time, earlier, and therefore taking precedence, superiority, and priority over any contractual liens, on any property owned by the corporation.

We think the franchise tax becomes a lien as of May 1 of the year in which the tax becomes due as provided in said Article 7084, supra, and that it remains a lien against all of the property owned by the corporation until the tax, including penalties and interest, is finally paid. Of course, the lien will follow the property of the corporation and a purchaser of the same would acquire it with notice of and subject to the State's lien for the unpaid franchise taxes, penalties, and interest.

You are, therefore, advised that each of the questions submitted by you are answered in the affirmative.

We do not interpret your inquiry to call for a determination of the question of the priority of the State franchise tax lien over other tax liens of the various taxing units of the State of Texas nor of the liens of the Federal government. Neither do we consider the scope of your inquiry to call for a determination of the question of the priority of said franchise tax lien over other statutory liens. We do not, therefore, pass upon these matters in this opinion.

We trust that we have fully answered your inquiry.

Yours very truly

APPROVED NOV 18, 1942

ATTORNEY GENERAL OF TEXAS

ATTORNEY GENERAL OF TEXAS

By Harold McCracken

Harold McCracken
Assistant